**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
www.flsb.uscourts.gov

In re:   Milady Cordero                                    Case No: 10-41221-RAM
                                                           Chapter 13

_____ Debtor    /

## ADVERSARY COMPLAINT

This is an action brought by Plaintiff, Milady Cordero ("Cordero"), against Defendants Yoandra Falcon ("Ms. Falcon"), Jose E. Falcon ("Mr. Falcon"), Carlos Zayas ("Zayas"), and Greentree Servicing, LLC ( "Greentree").  Plaintiff alleges the following:

## JURISDICTION

1. Jurisdiction is conferred on this court by 28 U.S.C. § 1334 and 28 U.S.C. § 157(b), as this proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11, and concerns the property of the Debtor in that case.

2. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Cordero is a natural person residing in Florida at all material times.

5. Ms. Falcon is a natural person residing in Florida at all material times.

6. Mr. Falcon is a natural person residing in Florida at all material times.

7. Zayas is a natural person residing in Florida at all material times.

8. Greentree is a corporation that has its principal place of business at 300 Landmark Towers, 345 St. Peter Street, St. Paul, Minnesota 55102.  Greentree conducted business in Miami-Dade County, Florida at all material times.  Its registered agent in Florida is CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.

## FACTUAL ALLEGATIONS

9. All actions complained of herein occurred in Miami-Dade County, Florida.

10. Cordero owns the manufactured home, vehicle ID number FLFLH32A09663ST (the "Subject Property").

11. The Subject Property is located at 20221 NW 52nd Court Lot # 517, Miami, Florida 33055.

12. Zayas acted as an agent of Mr. and Ms. Falcon with respect to the Subject Property.

13. During the negotiation for the purchase of the Subject Property, Zayas showed Cordero numerous documents, including IRS statements, lot statements, lienholder statements, correspondence, and a mobile home insurance policy, copies of which are attached as Composite Exhibit "A", to demonstrate his authority to act on behalf of Mr. and Ms. Falcon.

14. These documents indicated that Zayas was serving as an intermediary and agent of Mr. and Ms. Falcon in connection with the Subject Property. *See* Composite Exhibit "A".

15. Furthermore, Zayas represented that he had full legal authority to convey all legal interest in the Subject Property to Cordero.

16. In Florida, the authority of an agent to bind the principal to convey real estate is <u>not required</u> to be in writing. *Tatum Land Co. v. Marjohn Realty Co.,* 109 So. 813, 814 (Fla. 1926); *Rosenthal v. Finger & Margolis, P.A.*, 460 So. 2d 993, 994 (Fla. 4th DCA 1984).

17. On or about February 21, 2007, Cordero executed a Sales Agreement purchasing the Subject Property for $30,000 (the "Sales Agreement") from Zayas. *See* Exhibit "B".

18. The Sales Agreement required Cordero to pay $30,000 for the Subject Property broken down into a $15,000 down payment and a promise to pay a lien of approximately $15,000, held by Greentree, through monthly installments of $500. *See*  Exhibit "B".

19. At the time the Sales Agreement was executed, Cordero was not given title to the Subject Property.

20. After the Sales Agreement was executed, Zayas verbally told Cordero to pay the monthly amount stated in the Sales Agreement directly to him.

21. Zayas told Cordero that all payments made to him would be forwarded directly to Greentree.

22. Starting March 2007, Cordero began paying her $500 monthly installments for the Greentree lien to Zayas.

23. Cordero continued to pay these monthly installments to Zayas for approximately twenty-one months.

24. Around November 2008, Ms. Falcon contacted Cordero to inform her that Zayas had failed to forward the payments to Greentree.

25. During this conversation, Ms. Falcon demanded that Cordero begin making her contractual monthly payments directly to Ms. Falcon, which Ms. Falcon said she would forward to Greentree.

26. In doing so, Mr. and Ms. Falcon implicitly ratified Cordero's purchase of the manufactured home and assumption of the lien. *C.Q. Farms, Inc. v. Cargill, Inc.*, 363 So. 2d 379, 382 (Fla. 1st DCA 1979) (stating principal cannot accept benefits while disavowing obligation, must accept agent transaction in its entirety).

27. In addition to the monthly payments pursuant to the Sales Agreement, Ms. Falcon further demanded that Cordero pay off the arrearage that had supposedly accumulated on the lien due to Zayas' failure to pay. Cordero paid Ms. Falcon the amount she demanded.

28. Shortly thereafter, Cordero had a telephone conversation with Zayas wherein he admitted that he had failed to forward the payments to Greentree because he was facing financial difficulties due to his unemployment.

29. In December 2008, Cordero began making payments to Ms. Falcon for the Greentree lien.

30. From December 2008 until approximately September 2009, Ms. Falcon demanded varying amounts of money from Cordero each month. These amounts ranged from $273.24 to $675.00.

31. During some months in this period, Ms. Falcon would demand more than one payment from Cordero.

32. When these payments were aggregated, Cordero was paying Ms. Falcon as much as $844.42 per month.

33. Ms. Falcon claimed all these payments were necessary to bring the Greentree lien current.

34. Around October 2009, Cordero, suspicious of the legitimacy of Ms. Falcon's monetary demands, began paying Greentree directly to satisfy the lien.

35. On or about December 2009, Ms. Falcon, using her husband's position as debtor of the lien, told Greentree that Cordero was an imposter and Greentree should no longer accept Cordero's payments.

36. Henceforth, Greentree refused to accept Cordero's payments for the lien.

37. Despite Greentree's refusal to accept payments directly from Cordero, Greentree contacted Cordero advising her that she was obligated to find a way continue paying the lien lest she lose the Subject Property.

38. Had Zayas, Mr. Falcon, and Ms. Falcon forwarded the payments to Greentree as they said they would, Greentree's lien on the Subject Property would have been satisfied by now.

39. Cordero has made all the payments required under the Sales Agreement.

40. Cordero has continuously resided in the Subject Property since the date of purchase.

41. Cordero pays a lot rental fee of approximately $540 per month for the land upon which the Subject Property stands. Cordero is current on her lot rental payments.

42. Mr. and Ms. Falcon and Greentree have improperly tried to remove Cordero from her home.

43. On November 10, 2009, Ms. Falcon filed a Complaint for Eviction in County Court, Case Number 09-35954-CC 23, against Cordero.

44. In the Complaint for Eviction, Ms. Falcon falsely alleges that she is the owner of the Subject Property.

45. Furthermore, in her Complaint for Eviction, Ms. Falcon also falsely alleges that Cordero is her tenant under a lease agreement.

46. Cordero, in defense of Ms. Falcon's eviction action, asserted a claim of title to the Subject Property.

47. When a defendant in an eviction case raises a competing claim of title as an affirmative defense, the County Court where the action was filed no longer has jurisdiction to determine title to the property and the case must be dismissed. Fla. Stat. § 26.012 (2012); *Toledo v. Escamilla*, 962 So. 2d 1028, 1030 (Fla. 3d DCA 2007).

48. On or about June 7, 2010, an order was granted in favor of Cordero dismissing the eviction case for lack of jurisdiction, a copy of which is attached as Plaintiff's Exhibit "C".

49. As a result of Zayas' and Ms. Falcon's failure to forward payments to Greentree, Greentree brought a replevin action against the Subject Property in Circuit Court, Case No. 10-40801-CA 01, on July 27, 2010.

50. On or about October 14, 2010, an order was entered staying Greentree's replevin action because the Subject Property was included in Cordero's bankruptcy estate, a copy of which is attached as Plaintiff's Exhibit "D".

51. As part of that same order, because the Falcons failed to appear or otherwise defend the replevin action, the judge terminated any interest Mr. and Ms. Falcon had in Subject Property. *See* Exhibit "D".

52. Despite Cordero's satisfaction of the Sales Agreement, she still does not hold record title to the Subject Property.

53. A title search with the Florida Division of Motor Vehicles indicates that Jose E. Falcon is the record title owner to the Subject Property, a copy of which is attached as Exhibit "E".

54. As a result of Zayas's failure to forward payments to Greentree, Cordero has suffered economic damages for which she is entitled to compensation.

55. As a result of Mr. and Ms. Falcon's failure to forward payments to Greentree, Cordero suffered economic damages for which she is entitled to compensation.

56. As a result of these blatantly improper attempts to encroach on Cordero's title to the Subject Property, Cordero has had to expend significant time and financial resources to defend her rightful claim to title.

57. Cordero was forced to retain the services of Legal Services of Greater Miami, Inc. to represent her in this matter.

## COUNTS

## COUNT I - QUIET TITLE TO MANUFACTURED HOME
(as to Mr. & Ms. Falcon)

58. Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

59. Cordero executed the Sales Agreement to purchase the manufactured home on February 21, 2007. *See* Exhibit "B".

60. Zayas acted as an agent of Mr. and Ms. Falcon in connection with the Subject Property. *See* Composite Exhibit "A".

61. Zayas indicated that he had full authority to convey all legal interest in the Subject Property to Cordero.

62. In Florida, the authority of an agent to bind the principal to convey real estate is <u>not required</u> to be in writing. *Tatum Land Co. v. Marjohn Realty Co.,* 109 So. 813, 814 (Fla. 1926); *Rosenthal v. Finger & Margolis, P.A.*, 460 So. 2d 993, 994 (Fla. 4th DCA 1984).

63. Mr. and Ms. Falcon ratified Cordero's purchase of the Subject Property.

64. No certificate of title was ever delivered to Cordero.

65. Fla. Stat. § 319.21(3) states "… no person shall sell or otherwise dispose of a motor vehicle or mobile home <u>without delivering to the purchaser or transferee thereof a certificate of title</u> with such assignment thereon as may be necessary to show title in the name of the purchaser." (emphasis added).

66. Mr. Falcon is still listed as the titleholder of the Subject Property. *See* Exhibit "E".

67. The Subject Property is not considered real property because neither Cordero or any of the Defendants owns the land upon which the Subject Property stands.

68. The Subject Property, being considered a mobile home, is subject to Fla. Stat. § 319.21(3).

69. Mr. Falcon, Ms. Falcon, and Zayas failed to deliver the required certificate of title to Cordero after she executed the Sales Agreement on or about February 21, 2007.

70. Mr. and Ms. Falcon have had their interest in the property terminated as a result of an October 14, 2010 order issued as a part of Greentree's replevin action. *See* Exhibit "D".

71. The remedy of quieting title or removing cloud therefrom ordinarily relates to real property. However, a court of equity may give relief as to personalty and quiet the title thereto where, owing to exceptional circumstances, there is no adequate remedy at law. *Ellis v. Dixie Highway Special Road & Bridge Dist.,* 138 So. 374 (Fla. 1931).

72. Here, there is no adequate remedy at law.

WHEREFORE, Cordero requests the Court grant the following relief:

    (A)    Quiet title to the Subject Property in the name of Cordero;

    (B)    Order Mr. Falcon to transfer title to the Subject Property to Cordero and deliver a certificate of title to Cordero as required under Fla. Stat. § 319.21(3); and,

    (C)    Award such other relief the Court deems equitable, just and proper.

## COUNT II – DAMAGES FOR BREACH OF CONTRACT
### (as to Zayas, Mr. Falcon & Ms. Falcon)

73. Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

74. Cordero executed the Sales Agreement for the sale of the Subject Property. *See* Exhibit "B".

75. The Sales Agreement required Cordero to pay $30,000 for the Subject Property broken down into a $15,000 down payment and a promise to pay a lien of approximately $15,000, held by Greentree, through monthly installments of $500. *See* Exhibit "B".

76. Zayas was acting as the agent of Mr. and Ms. Falcon with regards to the Subject Property. *See* Exhibit "A".

77. In Florida, the authority of an agent to bind the principal to convey real estate is <u>not required</u> to be in writing. *Tatum Land Co. v. Marjohn Realty Co.,* 109 So. 813, 814 (Fla. 1926); *Rosenthal v. Finger & Margolis, P.A.*, 460 So. 2d 993, 994 (Fla. 4th DCA 1984).

78. Cordero has made all payments required of her under the Sales Agreement.

79. Had all of Cordero's payments been properly forwarded to the Greentree by Zayas and Ms. Falcon, the Greentree lien would have been satisfied.

80. Zayas, Mr. Falcon, and Ms. Falcon have failed to transfer title of the Subject Property to Cordero.

81. In fact, Ms. Falcon has openly denied Cordero's claim of title by trying to evict Cordero. *See* Exhibit "C".

82. As a result of this denial of title, Cordero has had to expend time and resources in defending her rightful claim of title.

WHEREFORE, Cordero requests the Court grant the following relief:

(A) Order Cordero to be reimbursed for consequential damages incurred in defending against Zayas', Mr. Falcon's and Ms. Falcon's breach of contract; and,

(B) Award such other relief the Court deems equitable, just and proper.

### COUNT III – UNJUST ENRICHMENT
### (as to Zayas, Mr. Falcon & Ms. Falcon)

83. Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

84. The Sales Agreement required Cordero to pay $30,000 for the Subject Property broken down into a $15,000 down payment and a promise to pay a lien of approximately $15,000, held by Greentree, through monthly installments of $500. *See* Exhibit "B".

85. Cordero has made all payments required of her pursuant to the Sales Agreement.

86.     Had all Cordero's payments been properly forwarded, the Greentree lien would have been satisfied by now.

87.     Mr. and Ms. Falcon, either directly or by and through their agent, have received the benefit of at least $30,000 in payments from Cordero.

88.     Despite her payments, Mr. Falcon, Ms. Falcon, and Zayas have still not transferred title of the Subject Property to Cordero.

89.     Zayas, Mr. Falcon, and Ms. Falcon have failed to provide any other benefit to Cordero for her down payment or assumption of the lien on the Subject Property.

WHEREFORE, Cordero requests the Court grant the following relief:

    (A)     Order Mr. Falcon to transfer title to the Subject Property to Cordero;

    (B)     Order Zayas, Mr. Falcon and Ms. Falcon to return to Cordero the $15,000 down payment and any other money paid by Cordero pursuant to the Sales Agreement and,

    (C)     Award such other relief the Court deems equitable, just and proper.

## COUNT IV – FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (as to Zayas, Mr. Falcon & Ms. Falcon)

90.     Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

91.     Cordero executed the Sales Agreement with Zayas for the sale of the Subject Property. *See* Exhibit "B".

92.     Zayas was acting as the agent of Mr. and Ms. Falcon in regards to the Subject Property. *See* Exhibit "A".

93.     In Florida, the authority of an agent to bind the principal to convey real estate is <u>not required</u> to be in writing. *Tatum Land Co. v. Marjohn Realty Co.,* 109 So. 813, 814 (Fla. 1926); *Rosenthal v. Finger & Margolis, P.A.*, 460 So. 2d993, 994 (Fla. 4th DCA 1984).

94. After execution of the Sales Agreement, Zayas, Mr. Falcon, or Ms. Falcon failed to give Cordero title to the Subject Property.

95. Since the execution of the Sales Agreement, Mr. Falcon has retained title to the property. *See* Exhibit "E".

96. Despite the sale of the Subject Property, Mr. Falcon, through his wife, has attempted to use his position as the record titleholder to evict Cordero from the property. *See* Exhibit C.

97. As a general rule, the measure of actual damages under the Florida Deceptive and Unfair Trade Practices Act is the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties; a notable exception to the rule may exist when the product is rendered valueless as a result of the defect, then the purchase price is the appropriate measure of actual damages. *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1321-22 (M.D. Fla. 2002).

98. As a result of Mr. and Ms. Falcon's deception, Cordero does not hold title to the property and, as such, has received nothing of value from the Sales Agreement.

WHEREFORE, Cordero requests the Court grant the following relief:

  (A) Order Zayas, Mr. Falcon and Ms. Falcon to reimburse the purchase price of the Subject Property to Cordero, including payments made to Greentree and any other money given by Cordero to Mr. Falcon.

  (B) Order Zayas, Mr. Falcon and Ms. Falcon to pay Cordero's reasonable attorney's fees and court costs in pursuing this action, pursuant to Fla. Stat. § 501.2105.

  (C) Award such other relief the Court deems just and proper.

### COUNT VI – FLORIDA'S CONSUMER COLLECTIONS PRACTICES ACT
### (as to Greentree)

99. Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

100. As part of the Sales Agreement, Cordero agreed to pay off the lien on Subject Property held by Greentree through monthly payments of $500. *See* Exhibit "B".

101. Though this agreement existed, Mr. Falcon remained the principal and only debtor of Greentree for the lien. This is evidenced by Greentree's billing statements from March 2007 to November 2008, which are attached as part of Composite Exhibit "A".

102. Despite the fact that Mr. Falcon remains the principal and only debtor for the lien, Greentree repeatedly contacted Cordero demanding she continue to make payments to Greentree.

103. Fla. Stat. § 559.72(9) provides as follows: "Prohibited Practices generally: In collection consumer debts, no personal shall: (9) claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or <u>assert the existence of some other legal right</u> when such person knows that the right does not exist." (emphasis added).

104. Because Cordero is not Greentree's debtor, Greentree has no legal basis by which to enforce Mr. Falcon's debt against Cordero.

105. Greentree knew Cordero was not indebted by its lien and that Cordero did not have title to the property.

106. As a result of these actions, Cordero has sustained economic damage for which she is entitled to compensation.

WHEREFORE, Cordero requests the Court grant the following relief:

    (A)    Order Greentree to pay Cordero actual and statutory damages pursuant to Fla. Stat. § 559.77.

    (B)    Order Greentree to pay Cordero's reasonable attorney's fees and court costs in pursuing this action, pursuant to Fla. Stat. § 559.77.

(C)  Award such other relief the Court deems equitable, just and proper.

## COUNT VII – CONVERSION
**(as to Mr. & Ms. Falcon)**

107. Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

108. On February 21, 2007, Cordero executed a Sales Agreement purchasing the Subject Property for $30,000 from Zayas. *See* Exhibit "B".

109. As part of the Sales Agreement, Cordero agreed to pay off the lien on the Subject Property held by Greentree. *See* Exhibit "B".

110. After the Sales Agreement was executed, Zayas advised Cordero to pay the monthly amount stated in the Sales Agreement directly to Zayas.

111. Zayas told Cordero that all payments made to him would be forwarded directly to Greentree.

112. Starting March 2007, Cordero began paying her $500 monthly installments for the Greentree lien to Zayas.

113. Cordero continued to pay these monthly installments for the Greentree lien to Zayas for at least twenty-one months.

114. In total, Cordero paid Zayas $10,500 in $500 installments from March 2007 to November 2008.

115. Though Zayas forwarded some or a part of these monthly payments to Greentree, Zayas failed to forward the payments in their entirety to Greentree.

116. A review of the account history of the Greentree lien, attached as Exhibit "F", reveals that Falcon only paid $7,772.72 to Greentree during this time period.

117. Around November 2008, Ms. Falcon contacted Cordero, informing Cordero that Zayas had been failing to forward the payments to Greentree.

119. During this conversation, Ms. Falcon demanded that Cordero begin making her contractual monthly payments directly to Ms. Falcon, which Ms. Falcon said she would forward to Greentree.

120. In doing so, Mr. and Ms. Falcon implicitly ratified Cordero's purchase of the manufactured home and assumption of the lien. *C.Q. Farms, Inc. v. Cargill, Inc.*, 363 So. 2d 379, 382 (Fla. 1st DCA 1979) (stating principal cannot accept benefits while disavowing obligation, must accept agent transaction in its entirety).

121. Under the doctrine of *respondeat superior*, a principal is liable for torts committed by an agent when the agent's conduct is of the kind the agent is hired to perform, the conduct occurs substantially within the acts authorized by the principal, and the agent is acting, in part, by a purpose to serve the principal. *Sussman v. Fla. E. Coast Props., Inc.*, 557 So. 2d 74, 75-76 (Fla. 3d DCA 1990).

122. Zayas was serving as an intermediary and agent of Mr. and Ms. Falcon in connection with the Subject Property. Zayas, as such, had authority to deal with the Subject Property. *See* Exhibit "A".

123. When Zayas made this payment arrangement, he was ensuring Cordero was able to comply with the contract made on behalf of his principals, Mr. and Ms. Falcon.

124. A demand for return of these funds was mailed to Mr. and Ms. Falcon on May 31, 2012, copies of which are attached as Exhibits "G" and "H" respectively. This demand satisfies the demand requirement of a conversion claim. *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 500-01 (Fla. 3d DCA 1994).

125. Where money is involved, a conversion action can be sustained if there is an obligation to deliver the specific money in question. *Walker v. Figarola*, 59 So.3d 188, 190-91 (Fla. 3d DCA 2011).

WHEREFORE, Cordero requests the Court grant the following relief:

    (A)    Order Mr. and Ms. Falcon to return $2,727.28 in funds to Cordero.

    (B)    Award such other relief the Court deems just and proper.

## COUNT VIII – CONVERSION AGAINST ZAYAS
### (as to Zayas)

126. Cordero realleges paragraphs 1 through 57 as if fully set forth herein.

127. On February 21, 2007, Cordero executed a Sales Agreement purchasing the Subject Property for $30,000 from Zayas. *See* Exhibit "B".

128. As part of the Sales Agreement, Cordero agreed to pay off the lien on Subject Property held by Greentree. *See* Exhibit "B".

129. After the Sales Agreement was executed, Zayas advised Cordero to pay the monthly amount stated in the Sales Agreement directly to Zayas.

130. Zayas told Cordero that all payments made to him would be forwarded directly to Greentree.

131. Starting March 2007, Cordero began paying her $500 monthly installments for the Greentree lien to Zayas.

132. Cordero continued to pay these monthly installments for the Greentree lien to Zayas for at least twenty-one months.

133. In total, Cordero paid Zayas $10,500 in $500 installments from March 2007 to November 2008.

134. Though Zayas forwarded some or a part of these monthly payments to Greentree, Zayas failed to forward the payments in their entirety to Greentree.

135. A review of the account history of the Greentree lien, attached as Exhibit "F", reveals that Falcon only paid $7,772.72 to Greentree during this time period.

136. Around November 2008, Ms. Falcon contacted Cordero, informing Cordero that Zayas had been failing to forward the payments to Greentree.

137. A demand for return of these funds was mailed to Zayas on May 31, 2012, a copy of which has been attached as Exhibit "I". This demand satisfies the demand requirement of a conversion claim. *Ginsberg v. Lennar Florida Holdings, Inc.*, 645 So. 2d 490, 500-01 (Fla. 3d DCA 1994).

138. Where money is involved, a conversion action can be sustained if there is an obligation to deliver the specific money in question. *Walker v. Figarola*, 59 So. 3d 188, 190-91 (Fla. 3d DCA 2011).

WHEREFORE, Cordero requests the Court grant the following relief:

    (A)    Order Zayas to return all funds given to him by Cordero, minus the amount of these funds which Zayas actually forwarded to Greentree, and

    (B)    Award such other relief the Court deems equitable, just and proper.

Submitted by:_____/s/_____
Jacqueline C. Ledon, Esquire
Address: Legal Services of Greater Miami, Inc., 3000 Biscayne Blvd., Suite 500, Miami, Florida 33137
Phone: (305) 438-2401
Email: jledon@lsgmi.org

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was sent:

*via CM/ECF electronic mailing on January 20, 2013, to:*

Nancy N. Herkert, Trustee
P.O. Box 279806
Miramar, FL 33027

Office of the US Trustee
51 S.W. 1st Avenue
Suite 1204
Miami, FL 33130-1614

Timothy D Padgett, Esquire for Green Tree Servicing LLC
2878 Remington Green Circle
Tallahassee, FL 32308

*via U.S. Postal Mail on January 22, 2013, to:*

ARS Account Resolution S
1801 NW 66th Avenue, Ste 200C
Plantation, FL 33313

Bank of America
P.O. Box 17054
Wilmington, DE 19850

BCA Financial Services Inc.
18001 Old Cutter Rd, Ste 462
Palmetto Bay, FL 33157

Central Financial Control
PO Box 66051
Anaheim, CA 92816

Collectron of Atlanta IN
P.O. Box 82269
Conyers, GA 30013

Credit Protection Association
13355 Noel Rd, Ste 2100
Dallas, TX 75240

FPL Bankruptcy Department
P. O. Box 025576
Miami, FL 33102

Green Tree Servicing, LLC
9119 Corporate Lake Drive, Ste 175
Tampa, FL 33634

Midland Credit Management
8875 Aero Dr.
San Diego, CA 92123

RJM Acquisitions LLC
575 Underhill Blvd. Ste 224
Syosset, NY 11791

Wachovia Bank
P.O. Box 5445
Portland, OR 97228

Wakefield & Associates
830 E. Platte Ave., Unit A
Fort Morgan, CO 80701

José Enrique Falcon
14951 SW 82nd Lane #101
Miami, Florida 33193

José Enrique Falcon
20108 NW 52nd Avenue
Miami Gardens, Florida 33055

Yoandra Falcon
1123 NW 22nd Place
Cape Coral, Florida 33993

Yoandra Falcon
1714 NW 5th Terrace
Cape Coral, Florida 33993

Yoandra Falcon
2160 SW 16th Avenue
Miami, Florida 33145

Mr. Carlos A. Zayas
1166 Greenley Avenue
Groveland, FL 34736

Mr. Carlos A. Zayas
20221 NW 52 Place
Miami Gardens, FL 33055

Mr. Carlos A. Zayas
20223 NW 52 Court
Miami Gardens, FL 33055

Mr. Carlos A. Zayas
1111 Bluegrass Drive
Groveland, FL 34736

____/s/_____
Jacqueline C. Ledón, Esq.
